## Lincks, et al. v. Lincks, et al.

(Decided January 17, 1911.)

### Appeal from Laurel Circuit Court.

1. Deeds—Consideration—Action to Set Aside.—While the true consideration for a deed may always be shown, that which the deed itself expresses as the consideration should not be set aside upon slight evidence.

2. Same—Father to Son—Love and Affection—Delay in Action—True Consideration.—Where a deed was drawn at the instance of the

grantors who were husband and wife, to their son and his wife in consideration of love and affection, and was executed under such circumstances as to show no deceit or fraud was practiced upon them, that it was read to and understood by them at the time, and fully complied with their wishes in the matter. Held, that the grantors, appellants, having waited for eight years before insisting that it failed to state the true consideration, the court is not disposed upon the uncertain recollection of witnesses to hold that the consideration of love and affection stated therein was not the true consideration.

H. C. FAULKNER and HAZELWOOD & JOHNSON for appellants.

GEO. G. BROCK and C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In the year 1901, appellant, Robert Lincks, and his wife, Eliza Lincks, who were, respectively, sixty-nine and seventy years of age, were the owners of two tracts of land, consisting of about 160 acres, situated in Laurel county, Kentucky. The title to one of these tracts, which consisted of about 70 acres, was in Eliza Lincks, while the title to the other tract, which consisted of about 90 acres, was in Robert Lincks, though his wife had paid a portion of the purchase money. Appellants had six children. The youngest of these was appellee, Benjamin Lincks. He and his wife and children lived upon the 90-acre tract with appellants, and had lived there for several years. On February 12, 1901, appellants conveyed 1 1-2 acres of the 90-acre tract to a church. On the same day they conveyed the remaining 88 1-2 acres to appellee, Benjamin Lincks, but reserved to themselves a life interest therein.

On August 7, 1909, appellants, Robert Lincks and Eliza Lincks, instituted this action against appellees, Benjamin Lincks and wife, Mollie Lincks. They charged in their petition that they had signed and acknowledged the deed in blank, and that thereafter appellee, Benjamin Lincks, either by fraud, inadvertence or mistake had caused the blank deed to be filled up and written out so as to express the consideration therein as "in consideration of the love and affection I have for the party of the second part," instead of the real consideration, which was that appellee was to haul appellants' wood and coal, plow their ground, plant and cultivate their corn, grain, garden and other crops on their farm, and to render appellants such other services and attention

as were suitable and proper for persons in their condition. They further charged that appellees had failed and refused to perform such services or to take care of them in their old age. They, therefore, asked that the deed be first reformed and then canceled and held for naught, and that appellees be permanently enjoined from selling or disposing of said land. Appellees, in their answer, denied all the allegations of the petition. They then pleaded, affirmatively, that they had always hauled appellants' wood and coal, cultivated their garden, planted and gathered their crops, and performed faithfully such other services as the appellants' condition required. They stated, however, that these services were performed, not because they constituted the consideration for which the conveyance was made, but as a mere gratuity and because of the relationship which they sustained to appellants. Upon final hearing the chancellor denied appellants the relief prayed for. From that judgment this appeal is prosecuted.

Appellant, Robert Lincks, testified that his son Ben said they would take care of appellants in their old age. Neither he nor his wife signed the deed, themselves, but did so only by making their marks. The deed was not read to them when it was signed. After the deed was executed, Ben and his wife and children never did anything for appellants. Appellants permitted them to reside upon the farm. Whatever appellees did was paid for by appellants. Nothing was said about love and affection when the deed was made. The only agreement was that appellee was to take care of them; that is, he was to help them do anything that they had to do. Appellant heard that Mollie Lincks had said they were going to sell out and move away. Since the deed had been made, Tom Webb and his children had performed the services which Ben had agreed to perform. Upon cross-examination he stated that Ben had put up some buildings, but that he had furnished all the timber. When he went to the clerk's office and had the deed read to him, it included both his and his wife's tract of land. He never at any time asked Ben Lincks or any of his family to haul wood or coal for him. He never asked him to do anything for them because he knew they did not want to. A while back he told Ben Lincks' children that he did not want any of them to come to his house; that the old woman had so many spells; so they stayed away. Ben Lincks never did anything for him unless he paid Ben for it.

Mrs. Eliza Lincks testified that they were giving the property to Ben to stay with them and take care of them in their old age. She was getting too old to do any work. Ben was as good a child to her as she had ever raised. He always treated her well. He treated her with more kindness than he did his daddy. He never refused to do anything for them that they asked him to do. Ben's wife and children were also very kind to them. His little girl stayed with appellants until the father decided to send her to school.

Sallie Baker claims that she heard Ben say he was going to furnish appellants a girl to stay with them, for the land. One or two other witnesses testified to the same effect.

Appellee, Benjamin Lincks, testified that the only persons present when the deed was executed were Thomas Bailes, the deputy clerk, appellee's father and mother, and appellee's wife. Mrs. Sallie Baker was not there. The deed had already been prepared and written out in full when his parents signed and acknowledged it. The deed was read over to them and they were satisfied with it. The deed was made just to suit them. The reason the deed was made was that appellee had no house fit to live in. He and his wife had made up their minds to buy a little home and build on it. He spoke to his father about buying a piece of land from him. His father replied that he would not sell him a piece of land, but was going to give him some land so that he could build on it, and would make him a deed so it would never be broken. Since the execution of the deed, he and his wife and children had always worked for and taken care of his parents. The deed was not made in consideration of such services, but the services were performed because appellants were his parents. At the time the deed was made there was an old log school house upon the place. He repaired that and built two other rooms. He then built a barn, set out an orchard, drilled a well, and built a smoke house, hen house and corn crib. He also cleared certain parts of the land and put in something over a thousand panels of fence, which he had been repairing and resetting every year. The improvements put up upon the farm were worth about $750.00. Neither he nor any member of his family ever refused to do any work or perform any services for his father and mother. Two of his children stayed with his parents up to about three years before the taking of his deposition. At that time his father ordered the children off the place; told

them that he did not want them about him. Neither he nor his wife had ever made any attempt to sell the place. It was not necessary for his father to sell the place in order to provide means to live upon; he had sufficient without it. Whenever he cultivated the crops he gave appellants one-third as rental. Ever since 1901 he had paid the taxes on the land.

Andrew Jackson, a very old man, testified that he was there during the day they were surveying the church lot. At the same time Robert Lincks told him that he was going to give Ben the remainder of the place because he believed in helping them who helped him. He drew both the deed for the church lot and the deed to Ben He did it at the request of appellant, Robert Lincks. He further testified to the improvements that Ben had made on the place and to the fact that Ben, his wife and children were constantly performing services for the appellants.

Thomas Bailes, the deputy clerk, testified that he was present and took appellants' acknowledgment to the deed. The deed was written out before they signed and acknowledged it, and was read over to appellants and they expressed themselves as satisfied with it.

Without setting forth the evidence more at length, we may say that it shows conclusively that there was no fraud or deceit practiced upon appellants. The making of the deed was altogether voluntary upon their part. The deed was made at Robert Lincks' direction, and even he does not testify that he was induced to do so. While appellants claim in their petition that the deed was signed and acknowledged in blank, and while Robert Lincks testified that the deed was not read over to him, the testimony of the disinterested witnesses in the case shows conclusively that the deed was fully prepared when it was signed and that it was read over to him and his wife, and understood by them. While it may be that appellants expected Ben to take care of them in their old age and perform such services as they required, the evidence, in view of all the circumstances of the case, is not sufficient to lead to the conclusion that the deed was made in consideration of such support. Ben was the youngest son. He was living on the place with them. He and his family had always been kind to appellants. He had spoken of buying a place elsewhere. He had also been away to neighboring States in search of work. Appellants evidently made the deed to induce him to remain at home. Robert Lincks' own conduct

rather tends to disprove his theory of the case. If he gave the farm to Ben in consideration for support, we see no reason why, as he claims, he should always have paid Ben for whatever the latter did for him. Although he claims that Ben and his family never did anything for them after the execution of the deed, he waited for eight years before concluding to enforce the consideration which he claims should have been stated in the deed. This is not a case where the parents have parted with all their property and given it to their children. Appellants have another farm, and have reserved to themselves a life estate in the tract deeded to Benjamin Lincks. While the true consideration for a deed may always be shown, that which the deed itself expresses as the consideration should not be set aside upon slight evidence. When we consider the fact that the consideration expressed in the deed is love and affection; that the deed was drawn at the instance of the grantors; that it was executed under such circumstances as to show that no fraud or deceit was practiced upon them; that it was read to and understood by them at the time, and fully complied with their wishes in the matter, and that appellants waited for a period of eight years before insisting that the deed failed to state the true consideration, we are not disposed to hold, upon the uncertain recollection of witnesses, that the consideration was other than that stated in the deed. It is apparent from this record that appellants got the idea that appellees were going to sell, and could sell, the land in question. They believed, too, that the deed included all the land they had, and, when sold, they would be deprived of everything. Doubtless others suggested that this might be done. They were thus prompted to bring this suit. However, such is not the case. Appellants still have the 70-acre tract and a life interest in the 88 1-2 acre tract.

As said before, our conclusion is that the real consideration was stated in the deed. But even if the consideration was as claimed by appellants, Robert Lincks could not drive appellee's family from his house and tell them that they were wanted there no more, and then claim that they had refused to perform such services as he and his wife required.

Judgment affirmed.